UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| MegaForce, a South Korea corporation, | Case No. 18-cv-1691 (ECT/HB) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| Joseph Robert Eng, an individual; William Joseph Johnson, an individual; and WAV Events and Entertainment, LLC, a Minnesota Limited Liability Company, | |
| Defendants. | |

---

Rachel K. Paulose, DLA Piper LLP, Minneapolis, MN; Mandy Chan, DLA Piper LLP, San Francisco, CA; Miles Cooley, DLA Piper LLP, Los Angeles, CA; and Sangwon Sung, DLA Piper LLP, East Palo Alto, CA, for Plaintiff MegaForce.

Brian N. Niemczyk, Stephen M. Ringquist, and Carol R. M. Moss, Hellmuth & Johnson, PLLC, Edina, MN, for Defendant William Joseph Johnson.

---

Plaintiff MegaForce, a concert promoter based in South Korea, commenced this action on June 19, 2018, alleging that it had entered into two contracts with Defendant WAV Events and Entertainment, LLC ("WAV")—the "Performance Agreement" and the "Appearance Agreement,"—for two events MegaForce was producing in South Korea on January 26 and 27, 2018. *See generally* Compl. ¶ 19 [ECF No. 1] and Exs. A [ECF No. 1-1] (hereinafter "Performance Agreement"), and B [ECF No. 1-2] (hereinafter "Appearance Agreement," and with the Performance Agreement, the "Agreements"). Under the Agreements, WAV was to have arranged for "the celebrity appearances of Floyd Mayweather Jr., and musical artists Lil Wayne and Lil Jamez." Compl. at 1. MegaForce

alleges that it paid WAV $110,000 under the Agreements, and incurred hundreds of thousands of dollars more in third-party expenses and liabilities as it prepared for the two events, but WAV never produced the promised celebrities, giving MegaForce less than two weeks' notice of the celebrities' non-appearance. *Id.* ¶¶ 13–14, 25, 35, 63–64. MegaForce sued WAV and its two co-"managers," Defendants Joseph Robert Eng ("Eng") and William Joseph Johnson ("Johnson"), whom MegaForce alleges personally strung it along for months until virtually the last minute. MegaForce brings claims for breach of contract and for breach of the covenant of good faith and fair dealing under each of the Agreements (Counts I and II for breach of contract and Counts IV and V for breach of covenant), and for fraud (Count III), unjust enrichment (Count VI), violation of the Minnesota Deceptive Trade Practices Act, Minn. Stat. § 325D.44 (Count VII), and civil conspiracy (Count VIII). *See generally id.* ¶ 4, 36–61. MegaForce brings the breach-of-contract claims and the claims for breach of covenant of good faith and fair dealing against WAV only; it brings each of its other claims against all Defendants. *See id.* ¶¶ 66–112.

WAV and Eng have not appeared in this action, and MegaForce now moves for a default judgment on its claims against them. ECF No. 48. Johnson, who has appeared, opposes the default-judgment motion to the extent a default judgment against WAV and Eng might somehow prejudice his rights as he defends against this litigation, and on the additional basis of an arbitration clause in each of the Agreements, under which (Johnson contends) all of MegaForce's claims in this action are subject to mandatory arbitration in New York. *See generally* Johnson Opp'n to Pl.'s Mot. for Dflt. J. [ECF No. 33], Johnson Opp'n to Pl.'s Second Mot. for Dflt. J. [ECF No. 61] (incorporating by reference ECF

2

No. 33). Johnson moves to compel arbitration and dismiss the claims against him. ECF No. 41. MegaForce opposes that motion, arguing primarily that Johnson, as a non-signatory to either of the Agreements, cannot compel arbitration under their respective arbitration clauses. MegaForce Opp'n to Johnson Arb. Mot. ("MegaForce Arb. Opp'n") [ECF No. 62]. Johnson's motion to compel MegaForce to arbitrate its claims against him will be granted, and MegaForce's motion for default judgment as to the two other Defendants will be denied without prejudice.

I

A

Johnson denominated his motion to compel arbitration under Fed. R. Civ. P. 12(b)(1), but, as MegaForce points out, recent Eighth Circuit case law makes clear that such motions should be analyzed under Rule 12(b)(6) or Rule 56, not under Rule 12(b)(1) or Rule 12(b)(3). *See Seldin v. Seldin*, 879 F.3d 269, 272 (8th Cir. 2018); *City of Benkelman, Neb. v. Baseline Eng'g Corp.*, 867 F.3d 875, 881 (8th Cir. 2017). Johnson states that he "has no objection to this motion being deemed a motion to dismiss under either" Rule 12(b)(6) or Rule 12(b)(1). Johnson Arb. Reply Br. at 4 [ECF No. 70]. In view of the Eighth Circuit's holdings in *Seldin* and *Benkelman*, Johnson's motion to compel arbitration will be analyzed under Rule 12(b)(6).

In reviewing a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *Gorog v. Best Buy Co.*, 760 F.3d 787, 792 (8th Cir. 2014) (citation omitted). Although the factual allegations need not be

3

detailed, they must be sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). The complaint must "state a claim to relief that is plausible on its face." *Id.* at 570.

Ordinarily, courts do not consider matters outside the pleadings in resolving a Rule 12(b)(6) motion to dismiss, *see* Fed. R. Civ. P. 12(d), but the Court may consider exhibits attached to the complaint and documents that are necessarily embraced by the pleadings without transforming the motion into one for summary judgment. *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003) (citation omitted). Because the Agreements are attached to, and embraced by, MegaForce's Complaint, they may be considered in resolving Johnson's motion.

B

Johnson is not a signatory to any Agreement with MegaForce containing an arbitration clause; those Agreements were signed by MegaForce and WAV only. The arbitration clause in each Agreement provides:

> **ARBITRATION:** This Agreement shall be governed and construed in accordance with the laws of the State of New York. Any claim or dispute arising out of or relating to this agreement or the breach thereof shall be settled by arbitration in the State of New York in accordance with the rules and regulations of the American Arbitration Association. The parties hereto agree to be bound by the award in such arbitration and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction thereof.

Compl. Exs. A at 5, B at 5.

The Parties suggest that, under the Agreements' choice-of-law clause, New York law governs the issue of arbitrability—*i.e.*, whether Johnson, as a non-signatory to the Agreements, can compel MegaForce to arbitrate its claims against him. *See* Johnson Arb. Br. at 7 [ECF No. 43]; MegaForce Arb. Opp'n at 7. No Party, however, relies meaningfully on New York law with respect to this issue. In his opening brief, Johnson cites a case describing the elements necessary to establish the existence of an enforceable contract under New York law, but then cites only cases from the Eighth and other federal circuits determining arbitrability under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.* Johnson Arb. Br. at 8–12. In his reply brief, Johnson cites another Second Circuit case as describing legal rules under New York state law for determining whether a signatory to an arbitration agreement can be compelled to arbitrate a claim with a non-signatory. Johnson Arb. Reply Br. at 8. But on this issue the Second Circuit case Johnson cites applies legal rules under the FAA. *Denney v. BDO Seidman, L.L.P.*, 412 F.3d 58, 70 (2d Cir. 2005). In its brief in opposition to Johnson's motion, MegaForce cites a Second Circuit decision, *JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163 (2d Cir. 2004), as identifying the four factors a court must consider in determining whether a dispute is arbitrable "[u]nder New York law." MegaForce Arb. Opp'n at 7. But this case lists those factors as relevant to determining arbitrability under the FAA. *JLM Indus.*, 387 F.3d at 169. All of this is not to suggest that the Parties' Second Circuit citations are not useful. They are. It's just to make clear that these cases apply the FAA—and not New York law—to determine

5

arbitrability. As a result, the Parties are not understood to rely upon New York law on the question of whether MegaForce must arbitrate its claims against Johnson.[1]

Ordinarily, the fact that Johnson and MegaForce never entered into an arbitration agreement would end the Court's inquiry because "arbitration is a matter of contract, and a party cannot be required to submit to arbitration any dispute which [it] has not agreed so to submit." *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960). But in some circumstances, certain common-law contract principles—including theories of estoppel—allow non-signatories to enforce an arbitration agreement against a signatory. *CD Partners, LLC v. Grizzle*, 424 F.3d 795, 799 (8th Cir. 2005) ("The courts clearly recognize a nonsignatory's ability to force a signatory into arbitration under the 'alternative' estoppel theory when the relationship of the persons, wrongs and issues involved is a close one."); *see also Medidata Sols., Inc. v. Veeva Sys., Inc.*, Nos.

---

[1] It would have been legally incorrect for the parties to rely upon New York law with respect to this issue. *See Foulger-Pratt Residential Contracting, LLC v. Madrigal Condominiums, LLC*, 779 F. Supp. 2d 100, 109 (D.D.C. 2011) (recognizing that "numerous courts of appeals have concluded . . . that the intent of the contracting parties to apply state arbitration rules or law to arbitration proceedings [must] be explicitly stated in the contract and that a general choice of law provision does not evidence such intent" (alteration omitted)); *Stone & Webster, Inc. v. Baker Process, Inc.*, 210 F. Supp. 2d 1177, 1182–83 (S.D. Cal. 2002) (stating that, if the parties intend state laws to govern the issue of arbitrability where the issue would otherwise be governed by the FAA, then "they must expressly incorporate those state procedural rules into their contract" and a "general choice-of-law clause will not suffice"); *cf. Volk v. X-Rite, Inc.*, 599 F. Supp. 2d 1118, 1123–24 (S.D. Iowa 2009) ("When faced with a choice-of-law problem as to whether federal or state arbitration rules apply to reviewing an arbitration award, the Eighth Circuit [has] held that . . . federal courts cannot apply state arbitration laws unless the parties' intent is abundantly clear." (internal citations and quotation marks omitted)). Here, the general choice-of-law clauses in the Agreements do not suffice to incorporate New York state law regarding arbitrability.

17-2694 (L) and 18-681 (CON), __ F. App'x __, 2018 WL 4224324, at *2 (2d Cir. Sept. 6, 2018) (citing *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 126 (2d Cir. 2010)).

The Eighth Circuit has held that a non-signatory may compel a signatory to arbitrate when "the relationship between the signatory and nonsignatory defendants is sufficiently close that only by permitting the nonsignatory to invoke arbitration may evisceration of the underlying arbitration agreement between the signatories be avoided," or when "the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the nonsignatory." *CD Partners*, 424 F.3d at 798 (alteration, citation, and internal quotation marks omitted). The Second Circuit has described a similar, if not functionally equivalent, test that "[a] non-signatory who attempts to compel arbitration under an estoppel theory must demonstrate that: (1) 'the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed,' and (2) the 'relationship among the parties . . . justifies a conclusion that the party which agreed to arbitrate with another entity should be estopped from denying an obligation to arbitrate a similar dispute with the adversary which is not a party to the arbitration agreement.'" *Medidata*, 2018 WL 4224324, at *3 (quoting *Ragone*, 595 F.3d at 127).

MegaForce does not dispute that the issues Johnson seeks to resolve in arbitration are intertwined with the Agreements signed by MegaForce and WAV. After all, MegaForce's claims against all Defendants are predicated on the circumstances under which the Agreements were negotiated, finalized, and ultimately (allegedly) breached. *See CD Partners*, 424 F.3d at 798. Rather, MegaForce contends that Johnson has not

7

demonstrated that the relationship among the Parties would make it unfair to require arbitration of the dispute. MegaForce Arb. Opp'n at 10–13.

But the type of relationship MegaForce alleges existed between itself, WAV, Johnson, and Eng is precisely the type of relationship that has led courts to allow non-signatory defendants to enforce arbitration agreements against signatory plaintiffs. Cases in which courts "have applied estoppel against a party seeking to avoid arbitration have tended to share a common feature in that the non-signatory party asserting estoppel has had some sort of corporate relationship to a signatory party; that is, this Court has applied estoppel in cases involving subsidiaries, affiliates, agents, and other related business entities." *Ross v. Am. Exp. Co.*, 547 F.3d 137, 144 (2d Cir. 2008) (emphasis omitted) (collecting cases); *see also CD Partners*, 424 F.3d at 798–99 (permitting non-signatories to compel arbitration of claims arising out of their conduct as officers of the signatory corporation). In particular, district courts have enforced arbitration agreements against signatory plaintiffs where the plaintiffs have treated the non-signatory defendants as essentially interchangeable with, or agents of, signatory defendants. *See CD Partners*, 424 F.3d at 798–99; *Carroll v. Leboeuf, Lamb, Greene & MacRae, L.L.P.*, 374 F. Supp. 2d 375, 378 (S.D.N.Y. 2005); *see also Ross*, 547 F.3d at 144–45 (citing with approval *Carroll*'s holding that plaintiffs were estopped from avoiding arbitration with non-signatories where "signatory plaintiffs 'specifically and repeatedly allege' that signatory defendant 'acted at all relevant times as the agent' of non-signatory defendants" (alteration omitted)).

Here, MegaForce alleges that WAV's "only managers are Mr. Eng and Mr. Johnson. No other person or entity held themselves out as being agents of WAV during the course of the conspiracy alleged in this complaint." Compl. ¶ 4. It consistently groups Johnson together with WAV and Eng as operating as a single unit in the course of committing the wrongs alleged in the Complaint, only rarely distinguishing among them for purposes of making factual allegations. *See generally* Compl.; *see also Carroll*, 374 F. Supp. 2d at 378 ("[T]he amended complaint lumps [a nonsignatory defendant], [a signatory defendant], and others together under the sobriquet 'Promoters' and treats them throughout as a unit."); *cf. Smith/Enron Cogeneration Ltd. P'ship v. Smith Cogeneration Int'l Inc.*, 198 F.3d 88, 97–98 (2d Cir. 1999) (holding that the fact that the party resisting arbitration could not rely for that purpose on the separate corporate existence of a number of Enron affiliates that it had referred to collectively in a prior complaint as the "Enron Group"). MegaForce's entire theory of liability against Johnson is that he should be held personally liable for actions he undertook as an agent and co-manager of WAV, and should be held jointly and severally liable with WAV and Eng. It alleges that much of the conduct on which it bases its claims was undertaken collectively by "Defendants," without distinguishing among Johnson, WAV, or Eng. The law and facts compel MegaForce to arbitrate its claims against Johnson.

MegaForce argues briefly that, under the "unclean hands" doctrine, Johnson should not be allowed to compel arbitration. MegaForce Arb. Opp'n at 8–10. It argues that by learning of the existence of this complaint prior to being served, appearing only on his own behalf, making arguments that would inure to the benefit of his defaulting co-Defendants, and representing himself as having disassociated from WAV and Eng (but perhaps not

9

having done so in fact), Johnson has somehow perpetrated a fraud on the Court. In the one case MegaForce cites in support of this argument, the Southern District of New York relied on judicial findings of fact made after extensive proceedings. *Motorola Credit Corp. v. Uzan*, 274 F. Supp. 2d 481, 505 (S.D.N.Y. 2003), *aff'd in part and vacated in part*, 388 F.3d 39 (2d Cir. 2004). Nothing approaching the proceedings or factual record in *Motorola Credit* exists here. There is no factual record here. There are allegations, and insofar as the equitable doctrine of unclean hands is concerned, the allegations permit no conclusions. Parties often learn of the existence of an impending suit before formal service. It may be unwise (or reasonable litigation strategy) not to respond to a pre-suit demand, but it would be a rare situation where a non-response justified an inference of unclean hands. Similarly, Johnson cannot be faulted for appearing and defending against MegaForce's claims. The fact that some of Johnson's arguments may (or may not) benefit his co-Defendants seems like a foreseeable result of suing multiple defendants. Johnson's assertion that he has disassociated from his co-Defendants is just that: an assertion. It would be improper at this stage to reach any conclusions or inferences one way or the other about the truth or consequences of that assertion. To summarize, particularly given the context of this motion, the facts and allegations MegaForce describes do not justify an inference that Johnson has behaved badly or that he has unclean hands.

For all of these reasons, Johnson's motion to compel MegaForce to arbitrate its claims against him will be granted.[2]

---

[2] To the extent MegaForce seeks "limited discovery as to Johnson's current interest in, and claimed 'disassociation' from, WAV," MegaForce Arb. Opp'n at 16, such

As for whether to dismiss or stay the case pending arbitration, Section 3 of the FAA provides that the action should be stayed. *See* 9 U.S.C. § 3 ("If any suit . . . be brought . . . upon any issue referable to arbitration . . ., the court in which such suit is pending, upon being satisfied that the issue involved in such suit . . . is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had . . . ."). Some courts have recognized a limited, judicially created exception to that rule, which applies when the entire controversy between the parties will be resolved by arbitration. *See, e.g., Green v. SuperShuttle, Int'l, Inc.*, 653 F.3d 766, 769–70 (8th Cir. 2011); *Rubin v. Sona Int'l Corp.*, 457 F. Supp. 2d 191, 198 (S.D.N.Y. 2006). Here, arbitration will not resolve the entire controversy: only Johnson has invoked arbitration. Accordingly, the better course of action is for the Court to stay the action—both as to Johnson, to permit him to arbitrate his claims, and as to the defaulting Defendants, for the reasons discussed below in connection with the default-judgment analysis. *See infra* at 12–13 (discussing the Eighth Circuit's *Pfanenstiel* decision).

The Court is also mindful of MegaForce's request, made during the hearing on this motion, that any order compelling arbitration require that the arbitration be concluded within thirty days, or by some other firm deadline. MegaForce is understandably eager to resolve its claims. But MegaForce can control when the case is initiated with the American Arbitration Association. *See generally* AAA Commercial Rules (hereinafter the "AAA

---

discovery would not be necessary or relevant to the Court's resolution of the arbitration motion, which is based on MegaForce's allegations regarding the nature of Johnson's relationship with WAV, Eng, and MegaForce at the time the Agreements, with their arbitration clauses, were executed.

Commercial Rules" or "AAA Comm. R.") at R-4(a)–(b) (providing, respectively, filing requirements generally and filing requirements when arbitration is sought pursuant to a court order). And from there, the arbitration will proceed under AAA Commercial Rules, which contain their own timelines. *See, e.g.*, AAA Comm. R. at R-5 (providing 14 days for respondent to file answering statement); R-24 (providing for a minimum of 10 days' notice of hearing date); R-45 (providing that an award be made by the arbitrator "promptly," and, unless otherwise agreed or required, within 30 days following the closing of the hearing or the due date for written submissions). Furthermore, Rule R-1(b) provides that, given the amount at issue, the Rules' provisions for expedited procedures will not apply "[u]nless the parties or the AAA determines otherwise." *See also* AAA Comm. R. at R-1(d) ("Parties may, by agreement, apply the Expedited Procedures . . . to any dispute."). The Agreements' arbitration clauses did not include an agreement to apply expedited procedures, and it thus would seem improper to impose any timing requirements not contained in or contemplated by either clause.

II

The Court will decline to grant MegaForce's motion for default judgment as to WAV and Eng at this time. MegaForce alleges that the two defaulting Defendants are jointly and severally liable with Johnson, who has appeared. As the Eighth Circuit explained in *Pfanenstiel Architects, Inc. v. Chouteau Petroleum Co.*, it would preferable to wait to enter a default judgment against WAV and Eng until MegaForce's claims are resolved against Johnson:

> When there are multiple defendants who may be jointly and severally liable for damages alleged by plaintiff, and some but less than all of those defendants default, the better practice is for the district court to stay its determination of damages against the defaulters until plaintiff's claim against the nondefaulters is resolved. This is not because the nondefaulters would be bound by the damage determination against the defaulters, but to avoid the problems of dealing with inconsistent damage determinations against jointly and severally liable defendants.

978 F.2d 430, 433 (8th Cir. 1992); *see also LEI Packaging, LLC v. Emery Silfurtun Inc.*, Civil No. 15-2446 ADM/BRT, 2017 WL 1082222, at *3 (D. Minn. Mar. 22, 2017) (analyzing *Pfanenstiel*). *Pfanenstiel* requires that MegaForce's motion for a default judgment against WAV and Eng be denied without prejudice. MegaForce, of course, may renew its motion as to WAV and Eng after its claim against Johnson is resolved.

If MegaForce ultimately does renew its default-judgment motion against WAV and Eng, that motion should address the Agreements' choice-of-law clauses, each of which provide that the "Agreement[s] shall be governed and construed in accordance with the laws of the State of New York." Compl. Exs. A at 5, B at 5. Although "[u]pon default, the factual allegations of a complaint (except those relating to the amount of damages) are taken as true, . . . 'it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law.'" *Murray v. Lene*, 595 F.3d 868, 871 (8th Cir. 2010) (quoting 10A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2688 at 63 (3d ed. 1998)). Accordingly, any renewed default-judgment motion should explain the legal basis

13

for MegaForce's entitlement to judgment against WAV and Eng on each of its statutory and common-law claims in light of the Agreements' choice-of-law clauses.

## ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT**:

1. Defendant William Joseph Johnson's motion to compel arbitration and dismiss claims [ECF No. 41] is **GRANTED IN PART AND DENIED IN PART** as follows:

   a. The motion is **GRANTED** insofar as it seeks to compel Plaintiff MegaForce to arbitrate its claims against Johnson.

   b. The Parties are **ORDERED** to arbitrate MegaForce's claims against Johnson.

   c. The motion is **DENIED** insofar as it seeks dismissal of the claims against Johnson.

2. Plaintiff MegaForce's motion for default judgment against Defendants Joseph Robert Eng and WAV Events and Entertainment, LLC [ECF No. 48] is **DENIED** without prejudice.

3. This action is **STAYED** until an arbitration award has been rendered in this matter and the Court is notified of the award or the resolution of the claims against Johnson.

Dated: February 1, 2019          s/ Eric C. Tostrud
                                               Eric C. Tostrud
                                               United States District Court